J. M. RECTOR, Jr., Ind., and d/b/a Ponderosa Mills of Mexico, Appellant,

v.

Gregorio DE ARANA, Appellee.

No. 5662.

Court of Civil Appeals of Texas.

El Paso.

Dec. 9, 1964.

Rehearing Denied Jan. 6, 1965.

Scott, Hulse, Marshall & Feuille, El Paso, for appellant.

Texas Ward and Gerald B. Shifrin, El Paso, for appellee.

CLAYTON, Justice.

This is a suit for damages for breach of contract filed by appellee against appellant, alleging that the latter refused to comply with the terms of a lumber purchase contract. The contract called for the sale by appellee and purchase by appellant of one million board feet of lumber from appellee's stock in "La Nortena", Chihuahua, Mexico, delivered to La Mesa Huracan, Chihuahua, in four lots of 250,000 board feet each, each shipment to be paid for by appellant with a letter of credit in the amount of $15,000.00 until the million board feet had been delivered and the purchase price of $60,000.00, or 750,000 Pesos (at the rate of 12.5 Pesos per dollar) had been paid. The first shipment under the contract was rejected by appellant's agent because of asserted inferior grade, and appellant repudiated the contract, appellee subsequently disposing of the lumber elsewhere.

On special issues, the jury found in answer to Special Issue No. 1 that the first shipment of 250,000 board feet of lumber was of the grade specified in the contract, and no point on appeal is made of this finding. In answer to Special Issue No. 2, the jury found that the market value of the first shipment of lumber at La Mesa Huracan immediately after its rejection by appellant was $9,830.00, or $39.32 per 1,000 board feet; and in answer to Special Issue No. 3, that the value of the remaining 750,-000 board feet remaining to be transported to La Mesa Huracan immediately after the rejection by appellant was $29,490.00, or exactly three times the value of the first shipment. The court, presumably taking the total values of the lumber—$39,320.00—as found by the jury, from the total value of the contract—$60,000.00—entered judgment for appellee for the amount of $20,680.00. Appellant's motion for new trial was overruled and this appeal taken.

Appellant, in the first two points of error, asserts that the jury's answers to Special Issues Nos. 2 and 3 were wholly without support in the evidence or so contrary to and against the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust. By the third point of error appellant maintains that under the evidence and the law the appellee was entitled to recover only nominal damages at best.

It is appellant's position under the first two points of error that the value placed by the jury upon the lumber of the grade

and quality that the jury found this lumber to be in answer to Special Issue No. 1, was unsupported by the evidence. Appellant points out that the contract price for this lumber was $60.00 per thousand board feet, or $15,000.00 for each shipment of lumber of 250,000 board feet per shipment—a price of $5,170.00 above what the jury found it to be worth in answer to Special Issue No. 2. Appellant then reviews all the testimony given as to value of the lumber and points out that the appellee himself testified that on the average the market price for this type of lumber varied from 1,000 Pesos to 1,100 Pesos per thousand board feet—$80.00 to $88.00 per thousand—in Juarez, Mexico at the time it was delivered to La Mesa Huracan. Juarez seems to be the nearest market for this lumber from La Mesa Huracan, and according to the appellee the cost of shipment from La Mesa to Juarez was approximately 100 Pesos, or $8.00 per thousand. Under the court's charge that "Where there is no market value for the property at the point where the property is located," (and there seemed to be none at La Mesa when the lumber there was rejected) "its market value is its market value at the nearest place where there is a market for it, less the cost of transporting it to such nearest market", the value placed by appellee himself on this lumber would be from $72.00 to $80.00 per thousand, a value of from $12.00 to $20.00 above the contract price. At another place in his testimony, appellee stated that in his opinion the value of the lumber shipped from La Nortena to La Mesa was more than the contract price. In fact the testimony of appellee himself placed about the highest value on the lumber that was shipped than any other witness, and the contract price was the lowest value. Most of the lumber included in the contract was actually sold to another purchaser in La Nortena about two years after its rejection by appellant for about 450 Pesos, or $36.00 per 1,000 board feet, about one-half price "more or less" because of its depreciated condition at the time of the sale, according to this purchaser. The record seems to reflect that the approximately 250,000 board feet of lumber that had been shipped from La Nortena to La Mesa was subsequently shipped to Juarez by appellee and sold for about $63.63 per 1,000 board feet.

From the foregoing it can be seen that, subject to some variation because of shipping charges, the evidence introduced from the foregoing sources produced the following results as to value of the lumber immediately after rejection by appellant:

Value in Dollars per Thousand Board Feet:

| | |
|---|---|
| Contract Price | $60.00 |
| Appellee's Estimated Value | 72.00 – 80.00 |
| New Purchaser's Value at La Nortena | 72.00 (based upon about $36.00 at about ½ price) |
| New Purchaser's Value at Juarez | 63.63 |
| Jury's answers to Special Issues 2 and 3 | 39.32 |

---

There is considerable other testimony in this record as to value, but it does not change the accuracy of the observation that the jury's answers to Special Issues Nos. 2 and 3 placed a lower valuation on the lumber at the time in question than the values presented to the jury in any testimony.

Perhaps one of the latest expressions of our courts in an analogous situation—a condemnation suit—is found in City of

Houston v. Hendrix, 374 S.W.2d 764. (Tex. Civ.App., 1964, ref., n. r. e.). In that case the condemnee valued her property at $30,000.00, and her witness placed the value at $20,804.00. A witness for appellant condemnor placed a value on the property of $18,171.00. The jury found the value to be $23,501.16, a value not placed upon the property by any witness, but well within the scope of the testimony as to value. Judgment was rendered for that amount, and the appellate court, affirming the judgment, held that the amount found by the jury was not excessive, from the record as a whole, and it was not so against the overwhelming weight and preponderance of the evidence as to be manifestly unjust or wrong. It then quoted from the opinion in State v. Haire, 334 S.W.2d 488 (Tex.Civ. App., 1960, ref. n. r. e.), as follows:

"'The answer of the jury to the issue is within the limits of the market value of the property as testified to by the witnesses. It is true that no witness testified that such value was $53,000. However, this was not necessary in order for such answer to find support in the evidence. State v. Littlefield, Tex. Civ.App., 147 S.W.2d 270, er. dism. j. c.'"

In a case slightly earlier than the Hendrix case, State v. Spears, 374 S.W.2d 250 (Tex. Civ.App., 1963), the jury in an eminent domain case valued the remainder of property after taking to be $8,905.00. Four expert witnesses testified that this value was, respectively, $10,781.00, $11,735.00, $10,387.00 and $9,550.00. The court said:

"The jury was not authorized to fix a value on the property in question, after the taking, at a less sum than that given by any witness. Houston Belt & Terminal Ry. Co. v. Lynch, Tex.Civ. App., 185 S.W. 362; Roberts v. State, Tex.Civ.App., 350 S.W.2d 388.

"The award found by the jury was excessive by the sum of $645.00"

and the court ordered a remittitur in that amount. In State v. Vick, 376 S.W.2d 89 (Tex.Civ.App., 1964), the appellate court held:

"The jury found in answer to Special Issues that the market value of the strip of land taken was $7,000.00; and that the market value of appellees' remaining land after the taking remained the same. We have read the statement of facts and find that there is no evidence that will support the jury's finding that the market value of the land taken was as much as $7,000.00. Appellee Vick's testimony was that the market value of the land taken was $150.00 per acre, or a total of $2,896.50. He did not testify as to the length or value of the fence that was actually on the land taken, but included in his estimate the cost of fences apparently later built along the right of way. Witness Graham testified that he figured the value of the fence on the land taken at $162.30. This was the highest value placed on the fence that was on the land taken. This amount added to the market value of the land taken, as testified to by Mr. Vick, makes a total of $3,058.80. The other witnesses testified to a lesser market value for the land taken than the value placed thereon by Mr. Vick. The finding of $7,000.00 as damages for the land taken is, therefore, excessive in the amount of $3,941.20, thus requiring reversal. Rule 440, Texas Rules of Civil Procedure; Carter v. Texarkana Bus Company, 1956, 156 Tex. 285, 295 S.W.2d 653."

We quote the following from Roberts v. State, 350 S.W.2d 388 (Tex.Civ.App., 1961, n. w. h.):

"* * * It has been held in Maddox v. Gulf, Colorado & Santa Fe Ry. Co., Tex.Civ.App., 293 S.W.2d 499, (err. ref. n. r. e.) that in a condemnation case of this kind the jury, when considering the value of condemnee's remaining property immediately after condemnation, are restricted only by the lowest figure testified to. See Houston Belt

& Term. Ry. Co. v. Lynch, Tex.Civ. App., 185 S.W. 362, affirmed Tex.Com. App., 221 S.W. 959. Also, in McConnico v. Texas Power & Light Co., Tex. Civ.App., 335 S.W.2d 397, (err. ref. n. r. e.) the court held that a jury is at liberty to reach its conclusion by blending all of the evidence admitted before them, aided by their own experience and knowledge of the subject of inquiry; that they are not compelled to credit all the testimony of any witness or to reject it all. Moreover, our courts have held that opinion evidence is not conclusive. A jury may consider and accept or reject such opinions or it may find its own opinion *from evidence* and by utilizing its own experience in matters of common knowledge. McCarthy v. City of Amarillo, Tex.Civ. App., 307 S.W.2d 595, (err. ref. n. r. e.); Coxson v. Atlanta Life Ins. Co., 142 Tex. 544, 179 S.W.2d 943 and Nelson v. State, Tex.Civ.App., 342 S.W.2d 644.

"Viewing the evidence most favorably against appellant on this point of 'no evidence', as we are required to do, and in view of the authorities above cited, we are of the opinion that we cannot say that there is no evidence to support the *submission or answer* of Special Issue No. 3, and therefore, appellant's first point is overruled.

"However, when we consider appellant's point No. 2 having to do with his contention that the verdict of the jury is so contrary to the great weight and preponderance of the evidence as to be manifestly wrong and unjust, we are required by the Supreme Court to apply a different rule. As said by the Supreme Court and In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, the question requires us to consider and weigh all of the evidence in the case and to set aside the verdict and remand the cause for a new trial if we conclude that the verdict is so against the great weight and preponderance of the evi-

dence as to be manifestly unjust, regardless of whether the record contains 'some evidence of probative force' in support of the verdict. * * * " (Emphasis supplied).

In the same case the court quotes the following from Thompson v. State, Tex.Civ.App., 319 S.W.2d 368:

"'Rule 328, T.R.C.P., provides that new trial may be granted when the damages are manifestly too small or too large. In condemnation, as in other cases, the rules governing the authority of an appellate court to set aside a verdict because of inadequacy are the same as those applicable to excessive verdicts. Schooler v. State, Tex.Civ.App., 175 S.W.2d 664, W/E Ref. W.M.; Nunn v. Daly, Tex.Civ.App., 150 S.W.2d 334, W/E Dis. judg. cor. And the appellate court will reverse and remand a condemnation case where the damages awarded are inadequate or without support in the evidence, or against the great weight and preponderance of the evidence. Nading v. Denison & P. Suburban Ry. Co., 22 Tex.Civ.App. 173, 54 S.W. 412; Cook v. Eastland County, Tex.Civ.App., 260 S.W. 881; Wallace v. Van Zandt County, Tex.Civ.App., 264 S.W.2d 202. See also In re King's Estate, 150 Tex. 662, 244 S.W.2d 660.'"

We believe that here we are governed by the foregoing principles. In arriving at this conclusion, we are aware that Judge Madison Rayburn, in his work on the Texas Law of Condemnation, sec. 219, has expressed views which may be interpreted as at variance with those expressed in some of the above-quoted cases. Such interpretation, however, we believe to be unsupported by decisions in the later cases.

■ We have concluded that appellant's Points of Error Nos. 1 and 2, based upon "no evidence", must be overruled. But we sustain these points of error on the grounds that the jury's answers to Special Issues Nos. 2 and 3 are so contrary to the over-

**508**

whelming weight and preponderance of the evidence as to be clearly wrong and unjust.

■ In the language of State v. Spears, supra, the jury was not authorized to fix a value on appellee's lumber immediately after its rejection by appellant at a less sum than that given by any witness. The least sum appears from all the evidence to be the value fixed by the contract at $60.00 per thousand board feet. The jury's answers fixing a value of $39.32 per thousand resulted in an excessive judgment for appellee.

While we overrule appellant's third point of error, it can be seen from the foregoing that the judgment in this cause, because of the values placed by the jury on the lumber in question, cannot be allowed to stand. Our procedure under such circumstances is set out in the 1956 Supreme Court case of Carter v. Texarkana Bus Company, 156 Tex. 285, 295 S.W.2d 653:

"Rule 440, Texas Rules of Civil Procedure, formerly Article 1862, R.C. S. of 1925, provides:

" 'In civil cases appealed to a Court of Civil Appeals, if such court is of the opinion that the verdict and judgment of the trial court is excessive and that said cause should be reversed for that reason only, then said appellate court shall indicate to such party, or his attorney, within what time he may file a remittitur of such excess. If such remittitur is so filed, then the court shall reform and affirm such judgment in accordance therewith; if not filed as indicated then the judgment shall be reversed.'

"The Supreme Court has held this rule imposes a mandatory duty upon the Court of Civil Appeals. Wilson v. Freeman, 108 Tex. 121, 185 S.W. 993; Texas Employers' Ins. Ass'n v. Lightfoot, 139 Tex. 304, 162 S.W.2d 929; Dallas Railway & Terminal Co. v. Farnsworth, 148 Tex. 584, 227 S.W.2d 1017."

This procedure has been adopted by many cases since the Carter case, perhaps the latest being City of Dallas v. McLemee, 378 S.W.2d 393 (Tex.Civ.App., 1964), which held:

"While we recognize the general rule that the probative force of evidence is for the jury, which may accept or reject the opinions of experts as well as the testimony of lay witnesses, yet we have the right and duty to determine whether testimony has sufficient probative force to support jury findings. Constitution of Texas, Art. V, § 6, Vernon's Ann.St.; In re King's Estate, 150 Tex. 662, 244 S.W.2d 660. Our review of all the evidence compels the conclusion that the verdict is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. Accordingly, we sustain all of appellant's points of error, set aside the verdict and remand the cause for a new trial.

"Since the only reason for reversal is the excessiveness of the verdict, we are required to indicate the amount by which we consider the verdict excessive and give the landowners a reasonable time within which to file a remittitur of such excess. Rule 440, Texas Rules Civil Procedure; Adams v. Houston Lighting & Power Co., 158 Tex. 551, 314 S.W.2d 826; Carter v. Texarkana Bus Co., 156 Tex. 285, 295 S.W.2d 653; County of Bexar v. Cooper, Tex.Civ. App., 351 S.W.2d 956, no wr. hist.; State v. Spears, Tex.Civ.App., 374 S.W. 2d 250. In determining that amount we are of course limited by the evidence in the record."

■ Since we have determined from the evidence that the lowest value placed upon the lumber involved herein after its rejection by appellant is the contract price of $60.00 per thousand board feet, we feel justified in using such figure in determining the proper basis for remittitur. From such

figure must be subtracted the amount of money subsequently received by appellee for the lumber, less cost of transportation to market, in order to arrive at the correct figure. The result thus obtained must then be subtracted from the judgment rendered to determine the amount of remittitur. On this basis we calculate the amount of remittitur to be $1,574.95.

We therefore suggest to the appellee a remittitur in the amount of $1,574.95, to be filed with the Clerk of this court in writing on or before fifteen (15) days from the date of this opinion, in which case the judgment as reformed by remittitur will be affirmed; otherwise the judgment will be reversed and the cause remanded for new trial. Costs herein are to be taxed against appellee.