The **URBAN RENEWAL AGENCY OF the CITY OF LUBBOCK, Texas, Appellant,**

v.

**D. P. TRAMMEL and wife, and Harold Deering, et al., Appellees.**

No. 7565.

Court of Civil Appeals of Texas.

Amarillo.

Jan. 31, 1966.

Rehearing Denied March 7, 1966.

Brock, Wright, Waters & Galey, Lubbock, for appellant.

William J. Gillespie, Nelson, McCleskey & Harriger, Lubbock, for appellees.

CHAPMAN, Justice.

Plaintiff below, The Urban Renewal Agency of the City of Lubbock, appellant here, filed its statement in writing as provided for by Article 3264, Vernon's Ann. Tex.Civ.St., to condemn under the right of eminent domain, and acquire thereby fee simple title to a tract of land owned by D. P. Trammel and wife, Kathryn Trammel, and leased to various tenants, including appellee, Harold Deering. From the award of Special Commissioners, appeal was perfected to the County Court of Law No. 2 of Lubbock County and tried to a jury. In the answer to special issues inquiring as to the value of the interests involved the jury found the value of the whole of the tract of land, together with its improvements and the leasehold estate, for years. Then in answer to subsequent issues submitted they apportioned out to the owners of the land and improvements, and to the lessee their respective interests. The court rendered judgment accordingly, from which appeal is perfected to our court.

In its first two points appellant urges reversible error because of the failure of the court to strike the testimony of ·Mr. Trammel because of his failure to testify to the reasonable market value, and for the alleged reason there was no competent evidence to support the jury's verdict.

Mr. Trammel was never asked the market value of his property but only his opinion " * * * as to what this property is worth." He answered $60,000 and based his reason for that figure on his statement that property had gone up in Lubbock, that it was worth that much to him, and as to " * * * the rentals I have coming in." On cross-examination he testified:

"Q. And you haven't undertaken to really ascertain what the market value is, what it would sell for on the market between two people, one willing to sell, but not compelled to sell, and one willing to buy but not compelled to buy?

A. Nope."

We hold the testimony was not sufficient to show the proper measure of value and should have been stricken. Tennessee Gas Transmission Company v. Wood, Tex. Civ.App., 331 S.W.2d 808 (N.W.H.); State v. Sides, Tex.Civ.App., 348 S.W.2d 446 (writ ref., N.R.E.); City of Houston v. Fisher, Tex.Civ.App., 322 S.W.2d 297 (writ dismissed); Texas Electric Service Co. v. Linebery, 162 Tex. 570, 349 S.W.2d 105.

However, under our interpretation of the record there is sufficient probative evidence from other sources to sustain the verdict and judgment rendered thereon.

■ Error of the trial court in permitting the introduction of inadmissible evidence does not require reversal where a study of the entire record reveals admissible testimony of like import sufficient to sustain the verdict. St. Louis Southwestern Ry. Co. of Texas v. Smith, Tex.Civ.App., 153 S.W. 391 (N.W.H.); Perez v. San Antonio Transit Company, Tex.Civ.App., 342 S.W.2d 802 (writ ref.); Slayden v. Palmo, 108 Tex. 413, 194 S.W. 1103, 1104.

The values testified to by appraisers qualified as experts being well within the values assessed, the failure to strike appellant's testimony was harmless. Rule 434, Vernon's Ann.Tex.Rules of Civil Procedure.

Counsel for the Trammels questioned the real estate appraisers as to the value of the land and improvements on them, using both the income approach and replacement approach. Then when separate counsel for lessee Deering questioned them he sought their opinions as to the value of the leasehold interest.[1] (This fact was shown at one place in the record even on cross-examination by opposing counsel asking the appraiser Stinson if he valued all ownerships in the property. He said: "Well, I just appraised for the buildings and land.") This was after he testified to a value of $43.196.30. This same witness later testified under examination of lessee's counsel to facts from which the jury could have found the value of Mr. Deering's leasehold interest in excess of $8,000. Two other appraisers testified to facts that would have shown the leasehold interest worth in excess of $11,000. These facts were established by showing he was paying only 85¢ per square foot while a barber shop on the premises was paying $2.17 per square

foot for a lease. Mr. Stinson then testified the grocery store should lease for $1.50 to $1.75 per square foot. Other expert appraisers testified to higher values per square foot. With six years and eleven months left on his option, the testimony thus showed a lease advantageous to the lessee equal to or greater than the amounts above stated.

In its charge the court asked the jury in Special Issue No. 1 to find the cash market value at the date of trial of the land and improvements as a whole, including the interest of the owner D. P. Trammel, together with the lessee's leasehold interest in said land and improvements, *represented by the lease contract upon the agreed rental and other terms and conditions of said lease.* They answered $48,000. (Emphasis added).

The cash market value was then defined and in Special Issue No. 2 they were asked to find the cash market value of the landowner's interest, as apportioned out of the cash market value found in Special Issue No. 1. That answer was $40,000.

Special Issue No. 3 then asked the jury to find the cash market value of the leasehold interest apportioned to Mr. Deering out of the cash market value found in Special Issue No. 1. That answer was $8,000.

■ With testimony in the record of the landowner's interest, based on the income approach and cost of replacement approach showing from as high as $41,000 to more than $43,000, and with testimony of the leasehold interest showing from approximately $8,000 to $15,000, we hold appellant's no-evidence point is without merit.

Appellant contends the method of submission allowed a double recovery, citing in support thereof State v. Lindley, Tex. Civ.App., 133 S.W.2d 802 (writ dismissed, judgment correct); City of Waco v. Mes-

[1]. This was after the witness Stinson had testified to a value of $43,196.30 for the landowners.

ser, Tex.Civ.App., 49 S.W.2d 822; 124 Tex. 417, 78 S.W.2d 169; Aronoff v. City of Dallas, Tex.Civ.App., 316 S.W.2d 302 (writ ref., N.R.E.); and Frankfurt v. Texas Turnpike Authority, Tex.Civ.App., 311 S.W.2d 261 (N.W.H.).

Wherein the cases cited are urged as authority for the contention of double recovery in the manner of submission in the instant case, they are all distinguishable from ours. In the Lindley case recovery was allowed for the whole, which included improvements, and additional recovery for the improvements. The court was clearly correct in holding that the judgment constituted double recovery.

The Aronoff case furnishes at least some authority for the manner of submission in the instant case. In Syl. 5 of that case the court held that where there are several interests or estates in a tract of land taken by eminent domain the proper method is to determine the interests as a whole and then apportion the gross award among the several owners according to their respective interests.

The charge of the court in the Messer case allowed the jury to assess, as an element of damage the value of the use of the property, as applied to the lease to Parker and at the same time to assess, as an element of damage, the value of the stand on the land used by lessee. As regards the landowners, a part of the basis of value respecting the lease was the use of the stand for rental purposes, thus allowing a double recovery for the Messers for the reason that the value of the stand would include the value of its use for any purpose, and therefore would necessarily include the value of its use for rental purposes. For this double recovery the judgments of the lower courts were reversed as between the Messers and the City.

■ In the instant case the value of the whole, both the landowner's and tenant's interests were found by the jury, and their respective interests apportioned from the whole. The charge obviously was patterned after the suggestions of the author of Texas Law of Condemnation, Rayburn, Sec. 191, p. 525. There the author stated:

"Where the total, or whole of a tract of land, together with its improvements is taken, * * * the entire fee reversion * * * can all be submitted at one time, so as to value as a whole the entire land, leasehold, and all interests as a whole, and then asked the jury to apportion out to each interest its respective share of the whole."

That is precisely what the court did in the instant case.

We do believe the language of Issue No. 1 would have been improved if the court had used following the name "D. P. Trammel" either the word "encumbered" or the word "burdened" rather than "together" but we still think the issue covered the whole, taking into consideration the value of the lease for the remaining six years and eleven months as above the rentals being paid. Where the lease is favorable to the lessee as the evidence here shows it to be, to the same extent it is a burden to the lessor landowner.

The Frankfurt case is quite different on the facts to the instant case and does not, in our opinion, furnish any authority to justify appellant's contention that the case at bar was submitted in such form as to allow double recovery.

■ There are numerous methods of submitting issues in condemnation cases to determine the values of the respective interests. Since we believe the method used here allowed the jury, based on probative evidence, to find the whole interest and then apportion the respective interests in such manner as to make the sum of the two equal to the whole, the refusal to give the issues tendered does not show reversible error.

Appellant's point of error number four contends the court committed reversible error in admitting testimony of the witness Alderson, Director of Urban Renewal, regarding the issuance of building permits by the City of Lubbock. The point contends his evidence had no bearing on the fair market value of the property being condemned, was inflammatory, highly prejudicial and created the impression before the jury that the Urban Renewal Agency had "frozen" the property but was unwilling to compensate him for it.

Appellees Trammel contend the testimony was invited by the appellant when it questioned Mr. Trammel concerning the need of repairs on the grocery building in an effort by such testimony to reduce the market value, thus giving them the right to show they were precluded from making substantial repairs that required a building permit or to construct any other building on the property.

Appellee Deering asserts it was admissible because appellant contended in the trial court that the lease was made with knowledge that the property was subject to being taken and he was entitled to show the history of the plan, the delays in carrying it out and indecisions as to whether they were going to carry it out as to the subject property.

■ We find it unnecessary to write on those questions. Even if the evidence was not admissible we believe a study of the record as a whole shows the failure on the part of Urban Renewal to show that but for such evidence the jury would probably have answered the issues of value more favorably to it.

■ Rules 434 and 503 T.R.C.P. direct appellate courts not to reverse a trial judgment for errors of law committed in the trial unless the errors constitute such a denial of the rights of the complaining party as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. In interpret-ing these rules Justice Calvert writing for the Supreme Court in 1958 in Condra Funeral Home v. Rollin, 158 Tex. 478, 314 S.W.2d 277, said: " * * * we have held with respect to many and various types of errors that a reversal may be ordered only when a review of 'the whole record' convinces the reviewing court that but for the error a different verdict or judgment would *probably* have been rendered. Texas Power & Light Co. v. Hering, 148 Tex. 350, 224 S.W.2d 191; City of Galveston v. Hill, 151 Tex. 139, 246 S.W.2d 860; Dallas Ry. & Term. Co. v. Bailey, 151 Tex. 359, 250 S.W. 2d 379; Aultman v. Dallas Ry. & Term. Co., 152 Tex. 509, 260 S.W.2d 596; Lumbermen's Lloyds v. Loper, 153 Tex. 404, 269 S.W.2d 367."

There was evidence in the case from witnesses who were classified as experts on values that would have supported a jury verdict for several thousand dollars more than the verdict rendered. So, even if it could be said that the evidence complained about in the point under discussion was not admissible, there is a complete lack of showing that but for such evidence the jury would probably have answered the issues more favorably to appellant.

In a condemnation case the Houston Court of Civil Appeals held that even where the trial court abused its discretion in permitting cross-examination with respect to land increasing four to five times in value since 1940 and as to the value placed upon the land in the inventory, that it was harmless error in view of its finding of $60 per acre as the land's value. Halbert v. Upper Neches River Municipal Water Auth., Tex.Civ.App., 367 S.W.2d 879. A study of the entire record fails to convince us that but for such evidence the jury would probably have answered the issues more favorably to appellant.

The last point to be discussed is based on asserted error of the court in refusing to declare a mistrial because of improper argument of counsel for the Trammels.

The first quote from the argument referred to which is urged by appellant as constituting reversible error is counsel's statement to the effect that this is the only country left where one may have the right to a trial by a jury of his peers, such as the jury in that case, " * * * and I believe as long as we have jury systems with juries such as you, people have no right of fear from any other person or any other government or governmental agency."

■ It was a governmental agency condemning the land, so that statement alone would not in our opinion constitute reversible error.

The attorney then proceeded to argue that his clients had been "tied up" since 1958; that he had been unable to get a building permit for a number of years " * * * so Mr. Trammel just didn't reach up and pull that $60,000 out of the air and bring it in here to you." He then continued to make further argument concerning the effect of the owner's inability to remodel and that the Trammels could not make the best use of it because of a governmental agency that delays and delays and delays.

■ No request was made to the court at any time to instruct the jury to disregard the argument above related but counsel waited until the jury had been retired and moved for a mistrial because of such argument. While we believe some of it was improper we do not believe a study of the record as a whole shows such a denial of the rights of appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment.

Each case, where points are based upon improper conduct of counsel, creates a different situation and the problem lies in applying the rules to each case, considering the record as a whole.

In Wade v. Texas Employers' Ins. Ass'n, 150 Tex. 557, 244 S.W.2d 197, the Supreme Court speaking through Justice Garwood said:

"Since the Greenlee case,[2] particular arguments have been held 'curable' and others 'incurable,' but the distinction has always been one of difficult application, and few general guiding principles therefor have emerged."

In a suit by a widow and son to recover benefits under the wrongful death statute, Article 4671, V.A.T.S., counsel for the claimants in Howsley & Jacobs v. Kendall, Tex., 376 S.W.2d 562, went completely outside the record to repeatedly argue to the jury that a young 24-year old Negro employee of defendant Howsley was testifying through the lips of the defendant Howsley and his battery of lawyers. Counsel then argued that the jury was going to have to decide between the testimony of that colored boy and the statements made by the deceased, "a man that was about to come face to face with his Master," in order to determine the truth. The court said:

"An assertion of facts having no evidentiary basis were placed before the jury and these asserted facts were in turn made the basis of an inflammatory appeal. No instruction of the trial judge could have removed the prejudicial effects of the argument and hence no objection was necessary to preserve the error."

We agree entirely with the court's reasons and conclusions in the Howsley & Jacobs case. It is difficult to conceive of conduct more inclined to inflame a jury.

The above quote from the Condra Funeral Home case by Justice Calvert discussed in another point is particularly applicable to the point here under discussion.

2. Gulf, C. & S. F. Ry. Co. v. Greenlee, 70 Tex. 553, 8 S.W. 129.

The Court cited a number of cases for the statement, including one involving argument. That case was Aultman v. Dallas Railway & Terminal Co., supra. In the Aultman case the Court of Civil Appeals had reversed the trial court because of argument of claimant's counsel. The Supreme Court said:

"* * * the argument must be improper, and it must be such as to satisfy the reviewing court that it was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case."

The Court then held it could not say in the light of the whole record "* * * there is more reason than not to believe that the jury's verdict for the petitioners was caused by the possible inference, to be drawn from the argument, * * *" and reversed the intermediate appellate court.

■ Appellant contends that definite rules have been established by our Supreme Court to the effect that where argument is merely inflammatory it is of a curable type but where in argument the attorney brings before the jury what they would not have in admissible evidence it is uncurable whether objected to or not. We do not believe there is any supreme judicial expression in this state which has categorically established the rules above stated to be the only rules to be followed as to whether a case must be reversed or affirmed because of the argument of counsel. To do so would vary, to say the least, the rules stated in the Condra Funeral Home case and the Aultman case and the rules stated in Texas Employers' Ins. Ass'n v. Haywood, 153 Tex. 242, 266 S.W. 2d 856 to the effect that reversal is dependent upon "* * * the degree of prejudice flowing from the argument— whether the argument, considered in its proper setting, was reasonably calculated to cause such prejudice to the opposing litigant that a withdrawal by counsel or an instruction by the court, or both, could not eliminate the probability that it resulted in an improper verdict. Rules 434 and 503, Texas Rules of Civil Procedure."

In a review of many Texas Supreme Court expressions on this subject, the rules quoted from the Haywood, Aultman and Condra Funeral Home cases appear to be consistent with the reasoning we have found in studying other cases where misconduct of counsel have been the bases of contentions for reversal, and consistent with the result we have reached in this case.

It must be kept in mind that the argument complained about had as its thesis the proposition of $60,000 damages for the whole taking. The jury showed in its verdict it was not influenced by such argument by assessing $12,000 less than that contended for in the improper argument. We think it just as probable that the conduct of Mr. Gillespie in continuing to ask questions contrary to the court's ruling and in making at least some reference in his argument to evidence the lady judge had held inadmissible would be calculated to prejudice the jury against him and perhaps his client. So, in studying the record as a whole we do not find such a degree of prejudice flowing from the argument, considered in its proper setting, as was reasonably calculated to cause and probably did cause the rendition of an improper judgment.

Accordingly, the judgment of the trial court is affirmed.